# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# EASTERN DIVISION
### Case No. 4:12-CR-00065-1-D

| | |
|---|---|
| UNITED STATES ) | |
| ) | REPLY IN SUPPORT OF MOTION FOR |
| v. ) | COMPASSIONATE RELEASE |
| ) | |
| ) | |
| VICTOR ANDRADE-CANTU, ) | |
| ) | |
| Defendant. ) | |

Mr. Victor Andrade-Cantu, via undersigned counsel, respectfully moves this Honorable Court to grant his motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his vulnerability to COVID-19. However, as verified herein and also attached to said Reply in Support of Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Andrade-Cantu properly exhausted his administrative remedies before proceeding pro se on the underlying Motion filed with this Honorable Court on April 27, 2020. (*See* Exhibit D: Verification of Mr. Andrade-Cantu's Exhaustion of his administrative remedies: Response from Warden S. Merendine). Mr. Andrade-Cantu suffers from high blood pressure and aristhmetic condition, which places him at the serious risk category of becoming severely ill from COVID-19. (*See* Exhibit A: Translated Medical Summary upon being diagnosed by a Medical Doctor. Accordingly, he has been suffering from these ailments for an extensive period of time, which further substantiates the impending need for compassionate release given that his immune system is seriously compromised.) Furthermore, Mr. Andrade-Cantu is designated to FCI Oakdale II in Louisiana; currently, there are (11) eleven inmates and (4) four staff members infected with COVID-19. *See* https://www.bop.gov/coronavirus/ wherein the public is provided a

"snap shot" of one time, which clearly is subject to change from moment to moment. As Judge Britt and Judge Boyle have granted such Compassionate Release Requests from this Honorable District, it is respectfully requested that this Honorable Court also issue an order reducing Mr. Andrade-Cantu's sentence to time served and/or home confinement. For example, please *see United States v. Roberto Pablo Gutierrez*, Crim. No. 5:11-CR-149-1-BR, ECF No. 156 (E.D.N.C. April 30, 2020).

## STATEMENT OF FACTS

Mr. Andrade-Cantu was charged with a two-count Indictment for Count 1: Conspiracy to Distribute 5 kilograms or more of cocaine between November 1, 2011 and March 21, 2012 in violation of 21 U.S.C. §846 and Count 2: Possession with the intent to distribute 500 grams or more of cocaine between March 14, 2011 in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2. On October 5, 2012 Mr. Andrade-Cantu pled guilty in open Court to Count 1 of the Indictment and is now currently serving out a 124-month sentence.[1] As the government has accurately cited, his release date is on January 2, 2021. Although this appears to be a short amount of time from now, it could potentially be a life-threatening time for Mr. Andrade-Cantu and/or serve to become the lengthiest time he would have to experience if he contracts the coronavirus with his current medical/physical and mental health problems.

As Mr. Andrade-Cantu properly identified in his pro se Motion, that he suffers from "debilitating high blood pressure, and aristhmetic condition," which make him particularly vulnerable to this deadly Coronavirus pandemic. Disturbingly, this current COVID-19 outbreak

---

[1] On April 25, 2014, Mr. Andrade-Cantu was initially Sentenced by this Honorable Court to a term of 156 months. [Docket Entry (D.E.) 250]. However, on October 30, 2015 Mr. Andrade-Cantu filed a Motion to reduce his sentence regarding the Drug Quantity Table Amendment. Thereafter, on May 19, 2018 this Honorable Court granted Mr. Andrade-Cantu's Motion for a reduction to his sentence and reduced his imprisonment to 124 months. [D.E. 258]

has not been contained in the United States and certainly (and sadly) not within our prison walls either.

On April 14, 2020, Mr. Andrade-Cantu filed a request for Compassionate Release reduction of his sentence with the warden at FCI Oakdale II, S. Merendine, who is currently serving as the Acting Complex Warden. Prior to this second request, he had made his first request before for a Compassionate Release reduction with Warden S. Merendine's predecessor. (The first request was not responded to by the acting Warden at that time. Although it would be speculation (with extrapolation regarding the current circumstances at Oakdale as well), this could be due to the fact that there was a change/transition in the Wardens. Thus, it likely "fell through the cracks" through no fault of Mr. Andrade-Cantu since he clearly proceeded in the proper fashion in exhausting the remedies within the BOP prior to filing this Motion with the Eastern District of North Carolina. Thus, he has satisfactorily pursued his administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A).

**BACKGROUND**

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). However, it was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

Mr. Andrade-Cantu is unfortunately immunocompromised given his long-standing internal medical fight to keep his blood pressure and aristhmetic system under control. (Exhibit A; and D.E. 244, Presentence Report (PSR) page 7 of 11, paragraphs 27 & 28.) Mr. Andrade-Cantu's request for compassionate release, Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when

> The defendant is—
> (I) suffering from a serious physical or medical condition;
> (II) suffering from a serious functional or cognitive impairment; or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Although Mr. Andrade-Cantu has not quite yet served 75 percent of his sentence, it is also worth noting that Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Andrade-Cantu's "suffering from a serious physical or medical condition." Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an extraordinary and

4

compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission. *See* BOP Program Statement 5050.49. During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/ e1306.pdf; *see also* Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf#page=1 ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population…", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing history); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. §

5

3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

## ARGUMENT

Medical doctors within our country (and elsewhere for that matter) have deemed Mr. Andrade-Cantu's vulnerability to COVID-19 as being placed in the high-risk category of likely not being able to survive the Coronavirus if he contracts it due to his extensive history of medical problems. This constitutes "extraordinary and compelling reasons" for relief. Mr. Andrade-Cantu's underlying medical conditions make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. His release does not pose a danger to the community, and a balancing of the § 3553(a) factors with the risks to Mr. Andrade-Cantu posed by COVID-19 warrants relief. Moreover, it is also important to note the mental pain and trauma that he experienced and its impact on his physical health as well. [PSR, Page 7 of 11, Paragraph 28.; *See* also Exhibit C.]

   **A. This Honorable Court Has the Authority to Determine that Mr. Andrade-Cantu's Vulnerability to COVID-19 does in fact Constitute an "Extraordinary and Compelling Reason" for a Sentence Reduction.**

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks

associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction.

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctor's estimated had a 25- to 40-percent chance of malignancy. While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3.

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in sentence under the compassionate release statute. They vary from individual to individual, which is to be expected, but a common thread attaches them all; that is, the need to otherwise have a fighting chance at surviving alongside the necessary love of your family, as opposed to physically suffering and unnecessarily deteriorating once the coronavirus is contracted by an inmate because of his/her unfortunate medical diseases and concerns. Some of these cases are cited below to identify the range of which Federal Courts across the country are granting such Compassionate Release Requests. These cases include:

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a

7

diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *United States v. Norris*, No. 7:19-cr-36-BO-2, 2020 WL 2110640 (E.D.N.C. Apr. 30, 2020) (finding defendant had demonstrated extraordinary and compelling circumstances for relief because he "suffers from various severe ailments," including a life-threatening disease, kidney failure requiring dialysis three times a week, and recurrent bouts of pneumonia, "that cumulatively make his continued confinement especially dangerous in light of COVID-19.")

- *United States v. Hansen*, No. 17-cr-50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020) ("[T]he Court cannot discount the risk to Hansen if he contracts coronavirus, as reliable information places him in a higher-risk category. Specifically, the presentence report documents that he suffers from diabetes, hypertension, high cholesterol, kidney disease, and chronic obstructive pulmonary disease, all of which are confirmed risk factors for serious illness if one contracts coronavirus.")

- *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (shortening 60-month sentence after only 21 months because Amarrah's "Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even though facility had no reported cases);

- *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *3 (E.D. Va. May 6, 2020)("The Court finds that Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person of his age with underlying health conditions.");

- *United States v. Quintero*, No. 08-cr-6007L, 2020 WL 2175171 (W.D.N.Y. May 6, 2020) (granting compassionate release to man who "suffers from diabetes, a compromised immune system, obesity, and hypertension," "which make him more susceptible than another to contract the virus.");

- *United States v. Reid*, No. 17-cr-00175-CRB-2, 2020 WL 2128855 (N.D. Cal. May 5, 2020) (granting compassionate release based on risks COVID-19 presents to individual with hypertension, high cholesterol, and Valley Fever, which causes lung infection and can result in acute pneumonia);

- *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *1 (D Mass. May 4, 2020) (holding that for the 54-year-old defendant who suffers from "diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis" "nothing could be more extraordinary and compelling than this pandemic");

- *United States v. Echevarria,* No. 3:17-cr-44 (MPS), 2020 WL 2113604 (D Conn. May 4, 2020) (finding 49-year-old with pre-existing respiratory condition—a history of bronchial

asthma—combined with the increased risk of COVID-19 in prisons had demonstrated extraordinary and compelling reasons for relief);

- *United States v. Early*, No. 09 CR 282, 2020 WL 2112371, at *2 (N.D. Ill. May 4, 2020) ("the Court cannot discount the risk to Mr. Early if he contracts coronavirus, as reliable information places him in a higher-risk category [62, diabetes and hypertension]. This, in the Court's view, qualifies as an extraordinary reason warranting consideration of a reduction of Mr. Early's sentence.");

- *United States v. Soto*, No. 1:18-cr-10086-IT, 2020 WL 2104787 (D. Mass. May 1, 2020) (finding inmate with hypertension at facility with COVID-19 cases located in New York had shown extraordinary and compelling reasons for relief);

- *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence.");

- *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence.");

- *United States v. Miller*, No. 16-cr-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) ("Miller squarely fits the definition of an individual who has a higher risk of falling severely ill from COVID-19. . . . Therefore, the Court finds that extraordinary and compelling reasons exist for his immediate compassionate release.");

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This pandemic, as applied to Mr. Andrade-Cantu, is an extraordinary and compelling circumstance.

**B. Mr. Andrade-Cantu's Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduced Sentence.**

The Centers for Disease Control have identified several factors that put individuals at higher risk for severe illness. "Based on currently available information and clinical expertise, **older adults and people of any age who have serious underlying medical conditions** might be

9

at higher risk for severe illness from COVID-19." CDC, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Those risk factors include:

- "People 65 years and older."
- "People who live in a nursing home or long-term care facility."
- "People with chronic lung disease or moderate to severe asthma."
- "People who have serious heart conditions."
- "People with diabetes."

*Id.*

A recent study published in the Journal of the American Medical Association (JAMA) found that among 5,700 patients in New York City who were hospitalized with COVID-19, the most common underlying medical conditions were **hypertension** (56.6 percent), obesity (41.7 percent) and diabetes (33.8 percent). Safiya Richardson et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area,* JAMA, available at https://jamanetwork.com/journals/jama/fullarticle/2765184. Similarly, as Judge Chuang noted in a recent opinion ordering the release of a defendant from the Central Treatment Facility in Washington, D.C., "as of March 2020, three-fourths of individuals who died from COVID-19 in Italy had hypertension." *United States v. Keaton*, No. TDC-18-0215, ECF No. 84 at *5 (D. Md. Apr. 23, 2020) (citing *Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 1663133, at * 1 (D. Md. Apr. 3, 2020).

Mr. Andrade-Cantu has at least one of the risk factors identified by the Centers for Disease Control and studies on those infected and that is "people with chronic lung disease or moderate to severe asthma", along with the above referenced condition of high blood pressure/hypertension.

His particular vulnerability to COVID-19 constitutes an extraordinary and compelling reason for relief given the spread of the virus within the Bureau of Prisons.

According to the Bureau of Prisons website, 1,563 federal inmates and 164 BOP staff members have tested positive for COVID-19, and 90 inmates have died and 1 BOP Staff Member. BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/. While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate, as the below graph demonstrates.



Amid this rapidly-unfolding crisis, the universally-recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[2]

---

[2] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-*

Mr. Andrade-Cantu is exactly the type of individual deserving of compassionate release: he is at risk of severe illness and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

**C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Andrade-Cantu's Sentence to Time Served / Adding a Period of Home Confinement As a Condition of Supervised Release.**

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Andrade-Cantu's compromised physical health, and the unique danger he faces if he contracts COVID-19 while being incarcerated especially when considering the cumulative effect of all medical factors impacting him and becoming severely ill, when combined with the other Section 3553(a) sentencing factors, clearly warrant relief.

*First*, Mr. Andrade-Cantu was convicted of one count to conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of cocaine. [D.E. 104] Thus, while Mr. Andrade-Cantu's offense conduct was certainly serious, it involved neither weapons nor allegations of intentional and direct violence.

*Second*, continued incarceration is not necessary to protect the community from the crimes of the defendant.

Finally, in this case, like those cited above, a reduction or modification of Mr. Andrade-Cantu's sentence would not diminish the seriousness of the offense, nor would it place the public

*content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf*. The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf*.

in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Andrade-Cantu, whose ability to engage in basic self-protective measures is restricted and thus, warrant relief.

## CONCLUSION

Mr. Andrade-Cantu has demonstrated extraordinary and compelling reasons for compassionate release and asks this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

Respectfully submitted,

GUIRGUIS LAW, PA

/s/ Nardine Mary Guirguis
Nardine Mary Guirguis
PANEL Attorney
434 Fayetteville St., Suite 2140
Raleigh, North Carolina 27601
Telephone: (919) 832-0500
Facsimile: (919) 246-9500
nardine@guirguislaw.com

*Designation: CJA Appointed*

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant Attorney for the United States electronically at the following address:

>Rudy Renfer
>Assistant United States Attorney
>Rudy.Renfer@usdoj.gov
>150 Fayetteville Street, Suite 2100
>Raleigh, North Carolina 27601

This 1st day July 2020.

>GUIRGUIS LAW, PA
>
>/s/ Nardine Mary Guirguis
>Nardine Mary Guirguis
>PANEL Attorney